# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| WESCO INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| ELEMENTS ARCHITECTURAL GROUP, | ) |
| INC., STEFEN LIPPITZ, and KRISTI LIPPITZ, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Wesco Insurance Company ("Wesco"), by its undersigned attorneys, allege as and for their complaint against Defendants Stefen Lippitz and Kristi Lippitz (together, the "Homeowners"), and Elements Architectural Group, Inc. ("Elements") as follows:

## NATURE OF THE ACTION

1.  This is an action for declaratory judgment brought pursuant to 28 U.S.C. §§ 2201-2202 and Fed. R. Civ. P. Rule 57, to determine a real and justiciable controversy between Plaintiff and Defendants with respect to the parties' rights and obligations under two Wesco insurance policies for a claim asserted against Elements by the Homeowners concerning the design of a single-family home at 606 West Stratford Place, Chicago, Illinois (the "Homeowners' Claim"). Wesco seeks a declaration that it has no obligation to defend or indemnify Elements in connection with the Homeowners' Claim.

## PARTIES

2.  Plaintiff Wesco is an insurance company organized under the laws of Delaware, with its principal place of business in the State of New York.

3. Defendant Elements is a corporation organized under the laws of the State of Illinois with its principal office located in Cook County, Illinois.

4. Defendant Stefen Lippitz is a citizen of the State of Illinois residing in Cook County, Illinois. Stefen Lippitz is joined in this action as a necessary party defendant and to bind him to the judgment of this court; no other relief is sought against him.

5. Defendant Kristi Lippitz is a citizen of the State of Illinois residing in Cook County, Illinois. Kristi Lippitz is joined in this action as a necessary party defendant and to bind her to the judgment of this court; no other relief is sought against her.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction in this matter pursuant to 28 U.S.C. §1332(a)(1) because the matter in controversy exceeds the sums or value of $75,000, exclusive of interests and costs, and is between citizens of different States. Specifically with respect to the amount in controversy, this matter concerns a request for insurance coverage arising out of a Claim for which the Homeowners have demanded in excess of $200,000 from Elements. With respect to the diversity of citizenship, Wesco is a citizen of the States of Delaware and New York, whereas none of the Defendants herein is, or should be considered, a citizen of the States of Delaware or New York.

7. This Court has personal jurisdiction over the Defendants because each of them is a citizen of the State of Illinois.

8. Venue is proper in this Court pursuant to 28 U.S.C. 1391 (a) (1) and (2) because Defendant Elements, Wesco's Named Insured, is located within the Northern District of Illinois, and because a substantial part of the events or omissions giving rise to this Complaint for Declaratory Judgment occurred within the Northern District of Illinois.

9. An actual controversy exists between Wesco and Defendants because Defendants assert, and Wesco denies, that there is coverage under the Wesco policies for the claim, and therefore this Court is authorized to grant a Declaratory Judgment as sought herein pursuant to 28 U.S.C. §2201(a).

## THE WESCO POLICY

10. Wesco issued an Architects & Engineers Professional Liability Policy, Policy No. ARA 1119279 02 to Elements for the policy period of November 6, 2015 to November 6, 2016 (the "2015-16 Policy"). A true and accurate copy of the 2015-2016 Policy is attached as Exhibit A.

11. The 2015-16 Policy was renewed for the policy period of November 6, 2016 to November 6, 2017 under Policy No. ARA 1119279 03 (the "2016-17 Policy"). A true and accurate copy of the 2016-2017 Policy is attached as Exhibit B.

12. The Insuring Agreements of the 2015-16 Policy and the 2016-17 Policy (collectively the "Policies") read, in pertinent part, as follows:

**SECTION I. INSURING AGREEMENTS**

**A. 1. PROFESSIONAL LIABILITY**

We will pay on behalf of the Insured **damages** that the Insured becomes legally obligated to pay because of **claims** made against the Insured for **wrongful acts** arising out of the performance of **professional services** for others.

…

**B.  CLAIMS-MADE AND REPORTED PROVISION**

This insurance applies to a **wrongful act** only if all of the following conditions are satisfied:

…

3

    **3.**    the **claim** arising out of the **wrongful act** is first made against any Insured during the **policy period**; and

    **4.**    the **claim** is reported in writing to us no later than 60 days after the end of the **policy period** or, if applicable, during an extended claims reporting period.

**C.**    **DEFENSE PROVISION**

We have the right and the duty to defend the insured against any covered **claim**, even if such **claim** is groundless, false or fraudulent. We will designate or, at our option, approve counsel to defend the **claim**. The Insured may request, in writing, the appointment of specific counsel from our panel of attorneys, which must be agreed to by us.

**Claim expenses** will be paid by us, and such payments will reduce the available limit of liability. Our right and duty to defend or continue to defend any **claim** ends when the applicable limit of liability has been exhausted by payment of **damages** or **claim expenses** or both combined.

…

13.    The Policies include the following definitions:

**SECTION IV. DEFINITIONS**
…

**C.**    "**Claim**" means a demand received by the insured for money, **damages** or **professional services** alleging a **wrongful act** arising out of the performance of **professional services** or **contracting services**.
…

**R.**    "**Policy period**" means the period of time specified in the Declarations.
…

**V.**    "**Professional services**" means those services that the Insured is legally qualified to perform for others in the Insured's capacity as an architect, engineer, land surveyor, landscape architect, construction manager, scientist, technical consultant, interior designer, land planner, golf course designer or as otherwise defined by endorsement to the policy.
…

**AA.**    "**Wrongful act**" means any actual or alleged negligent act, error or omission.

14. The Policies each contain the following provisions

**SECTION V. LIMITS OF LIABILITY AND DEDUCTIBLE**

A. **Limits of Liability**

The applicable limit of liability shown in the Declarations is the maximum we will pay regardless of the number of:

- Insureds
- individuals or entities that make a **claim**, or
- **claims** made.

1. **Limit of Liability—Each Claim**

    …

    Two or more covered **claims** arising out of a single **wrongful act**, or any series of related **wrongful acts**, will be considered a single **claim**. The single **claim** will be subject to the "Limit of Liability—Each Claim" in effect at the time such **claim** was first made against the Insured. Only one deductible will apply to such single **claim**. If the first of such **claims** is made prior to the effective date of this policy, no coverage shall apply to any subsequent **claims** made during this **policy period** which are based upon the same or related **wrongful acts**.

15. The Policies each contain the following conditions:

**SECTION VII. CONDITIONS**

A. **Insured's Duties in the Event of a Claim**

In the event of a **claim**, the Insured must do the following:

1. When a **claim** is made within the **policy period**, the Insured must give prompt written notice to us, but in no event later than 60 days after the end of the **policy period** or, if applicable, during an Extended Claims Reporting Period. Such written notice shall include every demand, notice, summons, or any other applicable information received by the Insured or the Insured's representative.

2. The Insured must not make any payment, admit any liability, settle any **claim** or assume any obligation without prior consent from us.

    **3.**    If the Insured has the right to either accept or reject the arbitration of any **claim**, the Insured will exercise such right only with our written consent.

    **4.**    The Insured must cooperate with and provide all relevant information to us with respect to any **claim**. We may require that the Insured submit to examination or questioning, or attend hearings, depositions and trials. In the course of investigation or defense, we may require written statements or the Insured's attendance at meetings with us. The Insured must assist us in effecting settlement, securing and providing evidence and obtaining the attendance of witnesses, all without charge to us.

    **5.**    The Insured must do whatever is necessary to secure and effect any rights of indemnity, contribution or apportionment that may be available to the Insured.

**B.**    **Reporting Potential Claims**

If during the **policy period**, the Insured first becomes aware of a potential **claim** arising from a **wrongful act** in the performance of **professional services**, such potential **claim** must be reported to us. The notice of the potential **claim** must be reported to us as soon as practicable during the **policy period**.

The notice of a potential **claim** must include the following:

    **1.**    the potential claimant's name and address;

    **2.**    a description of the **professional services** provided or that are alleged should have been provided;

    **3.**    an explanation as to why the Insured believes the **claim** may be made and the date that the Insured first became aware of such possible **claim**; and

    **4.**    an explanation of the type of **claim** that is anticipated.

Any **claim** that may subsequently be made against the Insured arising out of that **wrongful act** will be deemed for the purposes of this insurance to have been made on the date we first received such notice.

…

6

## BACKGROUND

16. On September 18, 2008, Elements entered into a contract to provide professional architectural services to the Homeowners to design a single-family home at 606 W. Stratford Ct., Chicago, Illinois (the "Residence").

17. Construction of the Residence was completed in 2011.

18. The Homeowners subsequently contacted Elements and the general contractor regarding leaking of the garage roof, and Elements worked with the Homeowners in an attempt to determine the cause of the leaks and the source of the water causing the leaks.

19. On July 5, 2016, the Homeowners' attorney sent a letter to Elements (the "Demand") that stated, in relevant part, that "a planter was designed by … Elements and was and still is defective …. Due to the defective workmanship and design of the planter over the garage[,] water collected under the wood deck and as a consequence leaked into the damaged garage." A copy of the Demand is attached as Exhibit C.

20. Further, the Demand stated that the Homeowners considered Elements to be one of the "parties liable" for the damages to the residence.

21. The Demand sought $64,070.00 in damages from all parties allegedly responsible for the defective design and construction of the Residence, and stated that an invoice was attached for corrective work "for which my client makes a claim against all of you," and threatened "appropriate litigation" will be brought if the sum is not paid within fourteen days.

22. Elements retained attorney Gregory Bird to respond to the Homeowners' allegations, and Mr. Bird sent a letter to the Homeowners' counsel on July 19, 2016 responding to their allegations and reminding them that their contract with Elements required mediation before

the commencement of litigation. A copy of the July 19, 2016 response letter is attached as Exhibit D.

23. On February 23, 2017, Homeowners' counsel sent a demand for arbitration to several parties involved in the construction of the residence, including Elements and its counsel (the "First Arbitration Demand"). A copy of the First Arbitration Demand is attached as Exhibit E.

24. The First Arbitration Demand sought a total of $92,000 in damages resulting from the defective construction and design of the Residence.

25. On August 17, 2017, the Homeowners sent a second demand for arbitration to several parties involved in the construction of the residence, and again directed their demand for arbitration to Elements (the "Second Arbitration Demand"). A copy of the Second Arbitration Demand is attached as Exhibit F.

26. The Second Arbitration Demand sought total damages in excess of $200,000 resulting from the defective construction and design of the Residence.

27. On August 30, 2017, after receiving the Second Arbitration Demand, Elements, for the first time, provided Wesco with notice of the Homeowners' Claim.

## COUNT I
### No Coverage Under the 2015-16 Policy
### As Claim Not Reported During the Policy Period

28. Wesco adopts and incorporates by reference paragraphs 1 to 27, as though set forth herein.

29. Section I.B.4. of the Insuring Agreements of the 2015-16 Policy provides that the Policy shall apply to a **wrongful act** only if "the **claim** is reported in writing to us no later than 60

days after the end of the **policy period** or, if applicable, during an extended claims reporting period."

30. The Demand constituted a **claim** first made against Elements during the **policy period** of the 2015-16 Policy.

31. The Demand was not reported in writing to Wesco within 60 days after the end of the **policy period** which ended on November 6, 2016.

32. No extended claims reporting period applied to the 2015-16 Policy.

33. Section I.B.2. of the Insuring Agreements of the 2015-16 Policy provides that the Policy shall apply to a **wrongful act** only if "the **claim** arising out of the **wrongful act** is first made against any Insured during the **policy period**."

34. The First Arbitration Demand was not first made against Elements during the **policy period** of the 2015-16 Policy.

35. The Second Arbitration Demand was not first made against Elements during the **policy period** of the 2015-16 Policy.

36. Accordingly, the Insuring Agreement of the 2015-16 Policy was not satisfied by the Homeowners' Claim, and Wesco thus has no obligation to defend or indemnify Elements under the 2015-16 Policy for the Homeowners' Claim.

### COUNT II
### No Coverage Under the 2016-17 Policy
### As Claim Not First-Made During the Policy Period

37. Wesco adopts and incorporates by reference paragraphs 1 to 27, as though set forth herein.

38. Section I.B.2. of the Insuring Agreements of the 2016-17 Policy provides that the Policy shall apply to a **wrongful act** only if "the **claim** arising out of the **wrongful act** is first made against any Insured during the **policy period**."

39. The Demand constituted a **claim** first made during the **policy period** of the 2015-16 Policy.

40. The Demand, the First Arbitration Demand, and the Second Arbitration Demand arise out of a single **wrongful act**, or a series of related **wrongful acts** concerning the defective construction and design of the Residence and are considered a single **claim** under the Policies.

41. That **claim** was not first made against Elements during the **policy period** of the 2016-17 Policy, which began on November 6, 2016, but was instead first made on or about July 5, 2016.

42. Accordingly, as the Insuring Agreement of the 2016-17 Policy cannot be satisfied by the Homeowners' Claim, Wesco has no obligation to defend or indemnify Elements under the 2016-17 Policy for the Homeowners' Claim.

**WHEREFORE**, the Plaintiff Wesco Insurance Company prays this Honorable Court:

A. Adjudicate and determine the rights of the parties hereto pursuant to the terms and conditions of the Policies;

B. Find and declare that Wesco is under no duty to defend or indemnify Elements in connection with the Homeowners' Claim, including but not limited to, the Demand, the First Arbitration Demand, and the Second Arbitration Demand;

C. Find and declare that Wesco is under no duty to pay on Elements' behalf any judgment entered or settlement reached in connection with the Homeowners' Claim, including but

not limited to, the Demand, the First Arbitration Demand, and the Second Arbitration Demand; and

    D.    Grant Wesco any and all further relief that this Court may deem equitable and just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Wesco demands trial by jury in this action of all issues so triable.


        Respectfully submitted,

        **WESCO INSURANCE COMPANY**


    By:    */s/Richard M. Kuntz*
        Richard M. Kuntz    (IL ARDC 6191104)
        Thomas D. Donofrio (IL ARDC 6229154)
        **Ruberry, Stalmack & Garvey, LLC**
        10 South LaSalle Street, Suite 1800
        Chicago, Illinois 60603
        (312) 466-8050
        (312) 466-8055 (fax)
        Richard.Kuntz@ruberry-law.com
        Thomas.Donofrio@ruberry-law.com